## HEATH v. WHITE.

### [OCTOBER 26, 1867.]

STRIKING PLEADING FROM THE FILES.—In no case will a pleading descent and decorous in language be struck from the files.

WHERE AN ANSWER SIMPLY TRAVERSES THE COMPLAINT and tenders no new issue, a replication is unnecessary.

A PROMISSORY NOTE GIVEN FOR THE PURCHASE PRICE OF GOODS SOLD IS NOT A PAYMENT of the debt, in the absence of a special agreement to that effect.

BREACH OF CONTRACT, CANCELLATION FOR.—W. sold goods to H. for six hundred dollars, taking a negotiable note therefor payable at sixty days, with the understanding that three hundred dollars should be paid in twenty days; H. having failed to make the first payment: *held*, that W. could surrender the note and recover the purchase price of the goods in an action of debt, before the maturity of the note.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—In the absence of statute, new trials are questions for the special consideration of the judge before whom the cause has been tried. An affidavit which discloses newly discovered evidence, but fails to show that this evidence could be produced on a retrial, is insufficient.

APPEAL from the third district court. White, plaintiff below, had judgment. The opinion states the facts.

*C. H. Hempstead,* for the appellant.

*E. D. Hoge,* for the respondent.

DRAKE, J.:

This case is brought into this court by an appeal from the judgment of the district court for the third judicial district. The case was originally commenced in the probate court of Great Salt Lake county. An examination of the record and proceedings in that court is necessary to enable us to judge of the correctness or incorrectness of the decision of the district court.

We find that on the tenth day of December, 1866, the plaintiff filed his complaint, setting up therein that the defendant was indebted to him in the sum of six hundred dollars ($600) for one span of mules, one wagon, and a set of double harness, sold and delivered to defendant on or about the thirtieth day of August, 1866, for which he prayed judgment, less the sum of two hundred dollars which had been paid by the defendant.

A citation to the defendant was issued, and on the seventeenth day of December he appeared and filed his answer, in which he emphatically denied being indebted to the plaintiff for any mules, wagon, and harness, or otherwise, at the time of the commencement of the suit or since. The attorneys for the plaintiff filed a motion to have the answer of the defendant stricken from the files of the court, alleging that the answer did not deny the allegations in the complaint, but set

up a conclusion of law, and prayed judgment might be entered in favor of the plaintiff for the amount claimed in the complaint.

It is difficult to see from where counsel obtained such notions of practice. The answer of the defendant was a positive denial of his indebtedness to the plaintiff for mules, wagon, and harness, or anything else, at the time the suit was commenced or since. It was indirect language, and a direct and pointed response to the allegations in the complaint.

The facts set up in support of the motion were falsified by the answer there before the court, and in no case can an answer or other pleading be struck from the files, providing such pleading is in decent and decorous language. If with a decent regard for the dignity and utility of courts such a practice could be tolerated, we should pass over such demonstrations without remark.

The replication of the plaintiff which then followed was, to say the least, unnecessary. The office and use of a replication is entirely different from that to which it was applied in this case. The answer was direct and pointed, and put in issue all the material allegations in the complaint, and furnished no grounds for raising any other or new issue. Why a replication should have been filed, simply repeating that the defendant was indebted to the plaintiff as alleged in the complaint, can hardly be accounted for upon any known principles of pleading. It may be questioned whether a replication ought to be used in any case proceeding in the courts of Utah.

By the seventh section of the act in relation to the judiciary, all technical forms of actions and pleadings are abolished. The second section of the act "regulating the mode of procedure in civil cases in the courts of the territory" provides "that any person seeking redress shall make his complaint in writing and under oath." The sixth section of the same act provides "that the defendant shall make his answer in writing and under oath, after which the plaintiff shall introduce his evidence, which shall be followed by that of the defendant.

When the seventh, eighth, and ninth sections of the act in relation to the judiciary, and the first six sections of the act regulating the mode of procedure in civil cases in the courts

of the territory, are taken into consideration, a doubt at least will arise as to the practice of using any other pleading in the courts of the territory than complaint, answer, and demurrer.

It was undoubtedly the intention of the legislature to simplify the practice in legal proceedings. How far that object can be attained must be left for the future consideration of courts. Certainly replications, rejoinders, rebutters, surrejoinders, and surrebutters can be dispensed with if the practitioner chooses to do so. Pleadings of this character were introduced at a time when the practice of the law was considered an occult science, when few were permitted to practice as attorneys and counselors, when a cloud of mysteries were thrown around all legal proceedings, and when human ingenuity was exhausted in mystifying and rendering the practice of the law uncomprehensible.

After the pleadings were perfected in this case, the parties proceeded to a trial of the issue by a jury. On the trial, witnesses were called by both parties; books of accounts were introduced by the plaintiff, wherein, under date of August 30, 1866, F. Heath was charged with one span of mules at three hundred and fifty dollars; one wagon, one hundred and sixty-five dollars; one set of double harness, seventy-five dollars; and interest, ten dollars; making a total of six hundred dollars; memorandum, note at forty-five days, September 1, 1866, three hundred dollars, to be paid by September 20, 1866.

In one of the books Frederick Heath was, under date of August 30, 1866, charged with merchandise, six hundred dollars; and under date of the twenty-second of September was credited with cash, two hundred dollars. George Stringham, jun., was called, and testified that on or about the first of September, 1866, he, by the order of the plaintiff in writing, delivered to the defendant one span of mules for three hundred and fifty dollars, one wagon for one hundred and sixty-five dollars, one harness for seventy-five dollars, and interest on the same at ten dollars; and then there was nothing said about a note in the order.

The defendant introduced and gave in evidence a bill of sale from White to Heath of the same articles at the same prices, with same amount of interest added; the total amount

the same as charged upon the books of the plaintiff. Below the footing of the bill was entered:

"By note at forty-five days, six hundred dollars. It is understood that three hundred dollars is to be paid on or before the twentieth of September, inst.

"September 1, 1866.          MATTHEW WHITE."

The defendant also offered in evidence to the jury a note in the words and figures following:

"$600.          GREAT SALT LAKE CITY, Sept. 1, 1866.

"Forty-five days after date I promise to the order of Matthew White six hundred dollars, without defalcation.

"[Stamp—Sept. 1, 1866.]          F. HEATH."

On the back was indorsed the following:

"Received on account of the within six hundred dollars, two hundred dollars ($200).          MATTHEW WHITE.

"GREAT SALT LAKE CITY, Sept. 22, 1866."

The defendant offered to prove by Mr. Halsey that the entry on the back of the note and signature to it was in the handwriting of Mr. White, the plaintiff. Objection was made to the note being offered in evidence, and the objection was sustained by the court, and the ruling excepted to. The case was submitted to the jury, and after consultation, the jury rendered a verdict of four hundred dollars for the plaintiff. Judgment was entered for the plaintiff against the defendant for four hundred dollars and costs. After which the defendant filed a motion for a new trial, and in support of that motion the affidavit of the defendant was filed, setting forth in substance that after the jury had retired to consult upon their verdict he had learned that he could prove by George Stringham, jun., that on or about the fourth or fifth of December, 1866, in a conversation which he had with the plaintiff, in speaking of the purchase of the property by Heath, he, Stringham, asked White if Heath had settled up with him for the mules, wagon, and harness, to which White replied, "Yes, it is all settled;" and that the knowledge of this evidence did not come to the defendant until after the jury had retired.

The motion for a new trial was denied by the court, the defendant excepted to the ruling of the court, and took an appeal to the district court for the third judicial district.

After the record and proceedings of the probate court were transmitted to the district court, the argument of counsel was heard, and the case was submitted upon the record and proceedings in the probate court, together with bill of exceptions appended to and made a part of the record.

After deliberation, the district court affirmed the judgment of the probate court. The defendant appealed from the decision of the district court to this court. The errors assigned for the consideration of this court are:

1. The district erred in affirming the judgment of the probate court of Great Salt Lake county; that it appears from the bill of exceptions attached to the record that in the trial in the court below it appeared in evidence on the part of the plaintiff that a promissory note had been executed by defendant to plaintiff in liquidation of the book-account sued on; that the defendant offered in evidence the said promissory note as *prima facie* evidence of payment of the debt sued on, and that the court sustained an objection to the admissibility of the note, which was thereon ruled out.

The assignment of errors concludes with the following prayer: That the judgment aforesaid, for the errors aforesaid and other errors apparent upon the record, may be reversed, and the said cause be remanded for a new trial, and for such other relief as the appellant may be entitled to in law.

The argument for the defendant showed that time had been occupied in the preparation, and the case was presented with much zeal and ability; we listened to it with pleasure, and we have studied his brief with care in connection with the full history of the proceedings before the probate court, as displayed by the transcript of the record, and we are unable to arrive at the conclusions so earnestly sought by the counsel for the defendant.

There is throughout the proceedings in the probate court evidently a want of precision. In some parts the proceedings are characterized as being in debt; in others, as being in *assumpsit.*

It must not be forgotten that all technical forms of action

and of pleading have been abolished in the territory. The declaration or complaint in this case is by no means a technical declaration in debt; neither can the answer be regarded as a technical plea. By the complaint in this case the defendant is informed of the precise nature and extent of the plaintiff's demand, without any circumlocution.

From the attempted technicality in the defendant's plea or answer has arisen much of the difficulty and perplexity which he has met with in the progress of this case. At the time of filing his answer, the defendant unquestionably knew that he had purchased of the plaintiff the articles set forth in the complaint, and at the prices therein stated, with an addition of ten dollars interest.

The bill of sale, which the defendant produced and made evidence, establishes this fact beyond all controversy. Had he paid for it at the time the suit was commenced? or had he paid in part? If so, he must have known that fact also. Why not then in his answer have admitted the purchase, and averred the payment in whole or in part as the truth might be? Instead of adopting this simple mode of pleading, he resorted to a technical form, as he now contends; by this resort, he avoided admitting the purchase of the property.

As all technical forms of actions and pleadings are abolished, we do not see how he can be benefited by the supposed technicality of his answer. And, moreover, as the statute requires that the answer shall be filed under oath, we think the answer in this case was a fearful approximation to perjury.

It is claimed that the defendant had given his note to the plaintiff in liquidation of the book-account. Liquidation is not payment, and the note of the party given for the purchase price is not payment for the goods bought unless there is some special agreement.

If upon the purchase of goods the note of the vendee is given to the vendor, payable at a future day, it extends the credit, and prolongs the time before which a suit may be brought for the purchase money.

If the vendor takes the note of the vendee, he may by disposing of it enable the vendor to make use of it as a payment. The note in this case was not one negotiable by delivery; to entitle the holder to use it as a negotiable note,

it must have the indorsement of the plaintiff upon it. It was made payable to his order; as it was not indorsed, it is not presumable that it had been used or disposed of in the way of business.

If the defendant had admitted the purchase of the property, and averred the giving of his note to the plaintiff, payable at a future day, and that he had after the giving of it paid it to the plaintiff or to a third person, if it was a negotiable note he then might have offered the note in evidence on the trial as *prima facie* evidence of payment. He gave no notice in his answer that such a note had been given, or that it was in his possession, or that he intended to make use of it in the trial.

A party can not be permitted to take his opponent by surprise. Judicial proceedings are instituted for the administration of justice, and not for the reward of chicanery.

If the defendant had made his pleading properly, he might, if it had become necessary, have used the note in evidence to prove the payment of the two hundred dollars indorsed on it, that indorsement being in the handwriting of the plaintiff. The defendant was not injured in that regard by the rejection of the note as evidence in the trial. The plaintiff had admitted the payment of two hundred dollars in his complaint. If, on the trial of the cause, the court rejects evidence which is strictly legal, it must appear that the party was injured thereby, or it is no cause for setting aside a verdict or for reversing the judgment.

If it should be a matter of inquiry how the note could have got into the hands of the defendant unless he had paid it.

On examining the testimony produced by the defendant, it will appear that upon the bill of sale of the property to Heath, after the articles are enumerated, the prices affixed, the interest set down, and the whole total expressed, the note at forty-five days is mentioned; it is further written " that it is understood that three hundred dollars is to be paid on or before the twentieth inst. The signature of White is there added and dated September 1, 1866.

This bill of sale was produced in court by the defendant in making evidence for himself. He also made it evidence against himself, as far as the plain and natural import of the words taken together would go.

We do not hesitate to conclude that the note was given and received with the express understanding of the parties that the sum of three hundred dollars should be paid on or before the twentieth of September. Was this understanding realized? Most clearly it was not realized.

We find that on the note which was offered in evidence two hundred dollars indorsed as having been received on the original six hundred dollars on the twenty-second of September, which sum was allowed in the complaint, and is expressed upon the books of the plaintiff. It is to be presumed that the note mentioned remained in the hands of the plaintiff up to the time of receiving the two hundred dollars. The defendant having failed to keep and perform his agreement in regard to the payment of three hundred dollars, it was competent for the plaintiff to say to the defendant that as he had not kept his promise to pay the amount of money at the time agreed upon, which was the inducement for receiving the note, he, the plaintiff, was not bound to wait for the payment of his debt until the time mentioned for the payment of the note; and upon the occasion of receiving the two hundred dollars, he may have handed the note to the defendant, as would have been his duty if he determined in his own mind that he would relinquish the note, and rely on prosecuting on the original purchase price.

In this way the defendant might have become legally possessed of it. But with due consideration of the pleadings in this case, we can perceive no other. Throughout the whole of the proceedings, the defendant has adroitly avoided acknowledging the purchase and the amount of payment.

The defendant complains that a new trial was not granted him by the probate court. A new trial is, unless regulated by statute, always a question for the especial consideration of the judge before whom the case had been tried. Usually it is not a question for a court of review. But supposing we could take it under consideration, let us inquire what reason is offered for a new trial. We find in the affidavit of the defendant it stated that after the jury had retired to consult upon their verdict he learned or was informed that in a certain conversation which the plaintiff had with one George Stringham, jun., about the fourth or fifth of December, 1866,

speaking of the purchase of the property by Heath, String-
ham asked the plaintiff if Heath had settled up for it, and
the plaintiff said "it was all settled up." Such is the sub-
stance of the newly discovered evidence which the defend-
ant expected to produce if a new trial was granted.

The defendant alleges in his affidavit that at the time of
the trial he did not know that such evidence existed. It
may be here observed that the defendant has nowhere laid
the foundation for this belief that any such testimony could
exist; he does not state how or by whom he had been in-
formed of it. The affidavit of Mr. Stringham, setting forth
the conversation, the question of the person, and the reply of
the plaintiff, was not produced. There was no sufficient evi-
dence given to the court from which it could reasonably con-
clude that if a new trial should be granted, the newly dis-
covered evidence could be produced. We asseverate that if
Mr. Stringham was put upon the stand as a witness, he would
testify that he had ever had such a conversation with the
plaintiff, or that plaintiff ever made such a reply. These
omissions, if not significant of an unusual degree of cunning
on the part of the defendant, are of great importance in con-
sidering the application, and in most cases insure its refusal.

If the defendant had put in a plea alleging payment, the
proof of such a conversation might have been properly given;
it would have had a tendency to prove the allegation; the
true force of the evidence would have been slight; it was a
casual conversation, and from all that appears, between the
persons having no particular intimacy; and the question was
by a person having no interest in the matter, and might per-
haps have been considered impertinent. It was at least a
presumptuous inquiry into the state and condition of the
pecuniary affairs of those with whom he had no interest or
connection in business.

Mr. George Stringham, jun., was a witness in the trial,
and if there had been any reason for proving what the plaint-
iff had said in this conversation, the defendant must have
known it, for it could arise only upon payment having been
made, and in that case by a reasonable diligence he could
have ascertained it and proved it upon the trial.

It is claimed that the note offered in evidence was improp-

erly ruled out; there was no proper foundation laid in the pleadings for the introduction of this note, except to prove the payment of two hundred dollars, and to that end it was entirely unnecessary. If, however, the broadest foundation for its introduction had been laid, the party did not put himself in a position to have it received. Before the note could have been received in evidence under the circumstances attending it at the trial, the signature to the note must have been proved or admitted to be the defendant's. We think the probate court committed no error in its rulings on the trial or in refusing a new trial.

We find no error in the record and proceedings of the district court.

Therefore it is ordered that the judgment and decision of the district court be affirmed, and that the clerk of that court proceed accordingly.

TITUS, C. J., concurred.

McCURDY, J., dissented.